**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**NOLAN KAY BERRY, JR.,**

      **Plaintiff,**

**vs.**                                                            **CIVIL ACTION NO. 3:17-CV-02354**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

      This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered April 17, 2017 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (Document Nos. 12 and 13.)

      Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (Document No. 12.), **GRANT** Defendant's request to affirm the decision of the Commissioner (Document No. 13.); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket.

**Procedural History**

The Plaintiff, Nolan Kay Berry, Jr. (hereinafter referred to as "Claimant"), protectively filed his applications for Titles II and XVI benefits on June 25, 2013, alleging disability since December 1, 2009, because of "arthritis, knee problems, hand, arm and back pain". (Tr. at 267.) His claims were initially denied on October 16, 2013 (Tr. at 119-123, 124-128.) and again upon reconsideration on February 3, 2014. (Tr. at 137-143, 144-150.) Thereafter, Claimant filed a written request for hearing on February 13, 2014. (Tr. at 151-152, 153-155.)

An administrative hearing was held on November 16, 2015 before the Honorable Leslie Weyn, Administrative Law Judge ("ALJ"). (Tr. at 45-78.) On March 7, 2016, the ALJ entered an unfavorable decision. (Tr. at 24-43.) On March 25, 2016, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 21-23.) Claimant requested additional time to submit more evidence in support of his case, the Appeals Council granted this request. (Tr. at 17-19.) After receipt of more medical records, the Appeals Council denied Claimant's Request for Review, rendering the ALJ's decision the final decision of the Commissioner on February 14, 2017. (Tr. at 1-6.)

On April 14, 2017, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 9 and 10.) Subsequently, Claimant filed a Brief in Support of Judgment on the Pleadings (Document No. 12.), and in response, the Commissioner filed a Brief in Support of Defendant's Decision. (Document No. 13.) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 35 years old as of the alleged onset date, and considered a "younger person" as of the date of the ALJ's decision and throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 36.) Claimant obtained his GED and last worked in 2009 when he injured his forearm while employed as a roof bolt operator; he had an unsuccessful attempt to return to work in 2010. (Tr. at 55-57.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner,

McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through March 31, 2015. (Tr. at 29, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date of December 1, 2009. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: osteoarthritis and degenerative disc disease. (Tr. at 30, Finding No. 3.) At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 32, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work:

> except the claimant can frequently climb ramps and stairs; can occasionally climb ladders, ropes, and scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme cold and excessive vibration.

(Tr. at 33, Finding No. 5.)

At step four, the ALJ found Claimant was incapable of performing any past relevant work. (Tr. at 36, Finding No. 6.) At the final step in the analysis, the ALJ determined that in addition to

4

the immateriality of the transferability of job skills, Claimant's age, education, work experience and RFC support a finding that there are other jobs that exist in the national economy that Claimant can perform. (Tr. at 36-37, Finding Nos. 7-10.) Ultimately, the ALJ determined Claimant had not been under a disability from December 1, 2009 through the date of the decision. (Tr. at 38, Finding No. 11.)

**Claimant's Challenges to the Commissioner's Decision**

Claimant argues that the ALJ's decision is not based on substantial evidence for numerous reasons. For starters, the RFC does not consider all of Claimant's impairments, specifically those the ALJ determined were non-severe: left ulnar neuropathy; bradycardia; GERD; and depression. (Document No. 12 at 5.) Additionally, Claimant takes issue with the great weight assigned to the State agency consultants' opinions as well as the ALJ's finding Claimant's statements less than credible when the objective evidence of record support his allegations of disability. (Id. at 6.) Finally, Claimant asserts that the ALJ improperly disregarded the vocational expert's opinion that Claimant would not be capable of substantial gainful activity if he were off task 20% or more in an 8-hour workday when the cumulative objective medical evidence and Claimant's subjective complaints supports this opinion. (Id. at 6-7.)

Claimant asks this Court to reverse and award him disability insurance benefits and supplemental insurance income, or in the alternative, remand for rehearing and grant his costs expended in prosecuting this appeal. (Id. at 7.)

In response, the Commissioner contends the ALJ properly found Claimant's left ulnar neuropathy, bradycardia, GERD, and depression non-severe because none of these impairments caused a significant limitation in Claimant's ability to perform basic work activities, and further,

none of the objective medical evidence including Claimant's own allegations supported a finding that they were severe impairments. (Document No. 13 at 9-14.) Moreover, the Commissioner points out that the record contains no medical opinion that Claimant suffered any functional limitation from these impairments or that they were severe. (Id.) With respect to depression, the Commissioner argues that Claimant did not allege this as an impairment in his applications for benefits, and further, Claimant was not diagnosed with depression until near the end of the relevant period, was transient in nature, and not satisfy the durational requirement under the Regulations. (Id. at 13-14.)

The ALJ properly assessed Claimant's RFC: despite his subjective complaints, the ALJ appropriately found that the objective medical evidence did not support the extent of his alleged limitations or the severity of his subjective complaints. (Id. at 15-16.) The Commissioner references the comprehensive examination report provided by independent evaluator William E. Waltrip, M.D., who provided a thorough physical examination of Claimant and provided substantial evidence for the ALJ's findings. (Id. at 16-17.) The ALJ did not rely exclusively on the opinion evidence provided by non-examining consultants, but properly credited the evidence that simply did not support a finding that Claimant had more severe limitations. (Id. at 17-18.) The ALJ gave each medical opinion great weight and they each aligned with one another finding Claimant capable of somewhat higher levels of physical exertion; however, the ALJ generously limited Claimant to light work in consideration of treatment records indicating ongoing knee and back pain. (Id. at 18.)

Finally, with regard to the vocational expert's testimony, there was no evidence to support a finding that Claimant would be off task for 20% of the workday, and the hypothetical questions

posed to the vocational expert properly comported with Claimant's credibly established limitations. (Id. at 19.)

In this case, the ALJ's decision is supported by substantial, if not overwhelming evidence, and the Commissioner asks this Court to affirm. (Id.)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Treatment Records Relating to Ulnar Neuropathy:

Claimant underwent an EMG study for hand and arm pain in June 2013 that was largely normal. (Tr. at 466.) Physical therapy records denoted some elbow pain from a previous injury during one week in February 2015 (Tr. at 716, 719.), but the pain improved and did not inhibit exercise at follow-up sessions later in the month. (Tr. at 726, 729.) In April 2015, Claimant described bilateral arm symptoms "while sleeping" rather than during the day (Tr. at 663.), for which he received a biceps injection in May 2015. (Tr. at 647.) A treatment note dated September 25, 2015 when Claimant returned to Marshall Health re-establish care for back, hips and leg pain, indicated his EMG studies were "negative for ulnar neuropathy". (Tr. at 637.) At that time, he also presented with grip strength greater than five out of five bilaterally. (Tr. at 640.)

Treatment Records Relating to Bradycardia:

Treatment records also show cardiac workups that ruled out a heart attack or other serious

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. The undersigned also notes the Commissioner's recognition that despite Claimant's confirmation that the record was complete at the administrative hearing and the record closed (Tr. at 49, 77.), "for reasons that are not explained", Claimant submitted additional medical evidence, Exhibits 10F and 11F. (Tr. at 732-939.) However, the ALJ's decision expressly notes that these additional medical records were considered. (Tr. at 43.)

cardiac event. (Tr. at 479.) One such evaluation revealed bradycardia (a slower than normal heart rate), which was not related to the symptoms Claimant was experiencing at the time. (Tr. at 683.) According to doctors, Claimant's bradycardia, for which the record denotes no recommended treatment, was "minimally symptomatic." (Id.)

Treatment Records Relating to Depression:

When Claimant presented at Valley Health on June 26, 2014 for complaints of heartburn, the record indicated that his depression screen rated "0," with Claimant reporting "no feelings of hopeless" and not feeling down or depressed. (Tr. at 613.) The first records indicating Claimant had depression symptoms are from Marshall Health from January 21, 2015 (Tr. at 674.), for which Claimant's physician prescribed Remeron. (Tr. at 679.) By April 2015, Claimant reported his sleep and mood were "much improved," and his physician reported that his mood and affect were "normal." (Tr. at 660.)

Treatment Records Relating to Knee Pain:

Claimant complained of chronic knee pain, but x-rays taken in April 2013 were negative. (Tr. at 330.) A treatment noted dated May 23, 2013 indicated that a non-steroidal anti-inflammatory, Mobic, was helpful for his symptoms. (Tr. at 463.)

Treatment Records Relating to Back Pain:

Claimant began physical therapy on February 3, 2015 (Tr. at 713-715.) It was noted in his initial evaluation that "around 8-6-14" he experienced gradually increasing low back pain that "was not associated with a specific mechanism of injury." (Tr. at 713.) Claimant had six sessions (Tr. at 713-728), but he reported that the pain in his low back remained unchanged and he was unable to do any movement that required twisting due to pain. (Tr. at 728.) Claimant was supposed

to attend three times a week for eight weeks, however, he did not return for any follow up visits or respond to requests to reschedule and was discharged. (Tr. at 731.)

An MRI taken of the lumbar spine on April 30, 2015 was normal with mild disc bulging and desiccation with some osteophyte formation without stenosis of T11-T12. (Tr. at 650.) August 6, 2015 treatment records showed Claimant had a normal gait and station and that he experienced no pain with straight leg raise testing. (Tr. at 645.) Treatment records dated September 25, 2015 showed some reduced range of motion in the lumbar spine, particularly with flexion, though again he had a normal gait and station, but slow to rise. (Tr. at 640.) Claimant reported his back pain radiated down to his legs, and although medications were helping, they did not offer "full relief." (Tr. at 637.)

Disability Examiner Report:

On September 25, 2013, William E. Waltrip, M.D. provided a consultative examination on behalf of the Disability Determination Service. (Tr. at 568-573.) During the physical examination, Claimant displayed a full range of motion in both knees. (Tr. at 573.) He walked with a normal gait; he could heel-to-toe walk; he could tandem walk; he could walk on the tips of his toes and his heels; and he could "perform the knee squat." (Tr. at 570.) Dr. Waltrip noted deep tendon reflexes were present and normal. (Id.)

Dr. Waltrip examined Claimant's back and found "no muscle tenderness" and no spasm. (Id.) No loss of motor strength detected; sensation was also normal. (Id.) Range of motion testing of Claimant's back "was done totally without limitation" (Id.) and he had full range of motion in his lumbar spine, in both hips, negative straight leg raising in both supine and sitting positions and full bilateral lower extremity muscle strength. (Tr. at 573.)

Claimant exhibited no functional limitations in use of the hand or arm. (Tr. at 570.) Dr. Waltrip found no redness, deformity, heat, or tenderness of the joints and Claimant could "make a fist and had good strength to grip." (Id.) Range of motion testing for the shoulder, elbow, and wrist was entirely normal (Tr. at 572.)

Dr. Waltrip opined that Claimant "has very minimal limitations of walking, standing or sitting" and "should be able to lift objects up to 35 to 40 pounds without limitation." (Tr. at 570.) Dr. Waltrip also found "no motor dysfunction, sensory loss, or reflex abnormalities." (Tr. at 571.) Dr. Waltrip opined that Claimant had good grip strength and could perform both fine and gross manipulations. (Id.)

Additionally, Dr. Waltrip's consultative report depicted a normal cardiac examination that was normal. (Tr. at 570.)

State Agency Medical Consultants:

At the initial level of review, on October 14, 2013, James Binder, M.D. reviewed the medical evidence of record and concluded that Claimant could perform a range of medium exertional work with a limitation to occasional stooping, crouching and crawling and to avoid concentrated exposure to extreme cold and vibration. (Tr. at 83-85, 92-95.) At the reconsideration level of review, on February 3, 2014, Rogelio Lim, M.D. affirmed Dr. Binder's findings. (Tr. at 103-105, 112-114.) Drs. Binder and Lim also found no manipulative limitations after their own review of the record. (Tr. at 84, 93, 104, 113.)

**The Administrative Hearing**

Claimant Testimony:

Claimant resides with his significant other, one of his children, and four adopted great-nieces and nephews. (Tr. at 53.) He has a suspended license due to two DUIs when he used to work in New York. (Tr. at 54.) His significant other drives him. (Id.)

Claimant testified that he was in the International Brotherhood of Electrical Workers and received on the job training to obtain his union card. (Tr. at 55.) He hurt his right arm in August 2009 when he tore ligaments and tendons while working; he was on workers' compensation for about eight weeks and then attempted to return to work in April 2010 for about two weeks, but he was unable to continue working due to pain in his arm and back. (Tr. at 55-56.) He has not worked since then. (Tr. at 57.)

Claimant testified that his back pain gives him the most trouble, and that he has pain every day making it very uncomfortable to bend or squat. (Tr. at 58.) He explained that the pain radiated into his right leg as far as his ankle numerous times. (Tr. at 59.) He testified that this will last as long as ten to twenty minutes and occurs about three times a week. (Tr. at 70.) He has to sit down and stretch his leg out when this happens. (Id.) He stated that he takes Mobic and Neurontin for pain, though they do not eliminate the pain entirely, they "just knock[] the edge off a little bit." (Tr. at 58-59.) Claimant described his pain while at the hearing as 7 out of 10 on the pain scale, but before he takes his medicine in the morning, it is between a 9 and 10. (Tr. at 59.) Claimant denied having any side effects from the medications. (Id.) He also takes Flexeril, a muscle relaxer, as well as over the counter Tylenol Extra Strength. (Tr. at 69.)

Claimant stated he also loses his grip in his left hand that he believed was associated with the ulnar nerve. (Tr. at 60.) He wears a brace at night for it. (Id.) When trying to grab something or turn, his right hand will have sharp, piercing pain that shoots into his forearm and shoulder and

11

even in his pinky and ring finger he experiences pins and needles sensations; he thinks this is from his injury in 2009. (Id.) He experiences left and right hand problems about half a dozen times a day. (Tr. at 70.)

His knees will catch and lock on him sometimes when he bends down and has had to have his significant other pull it to pop it back where he could not move it. (Tr. at 61.)

Claimant testified that he had physical therapy for his back, but he did not return after six visits earlier in the year because he did not get any relief and after the last session, he could not get out of bed for three days due to pain. (Tr. at 62.) He has a TENS unit, once visited a chiropractor, and tried a heating pad and ice for his back pain, but none of these helped his pain. (Id.) The only relief he can get at home is sitting in his recliner, and he "pretty much" stays in it except when he goes to the bathroom or gets up for a snack. (Tr. at 62, 70.) Claimant testified that he had treated for pain management and he had one series of injections on his back, but that also has not helped the pain, maybe two days at most. (Tr. at 69-70.)

In a normal day, Claimant testified that he only takes out the garbage, helps with laundry a little, but he does not help get the kids off to school. (Tr. at 66.) He tried to mow the grass, but his son ended up finishing because even sitting in the riding mower bothers his back. (Id.) He makes simple meals, such as heating Hot Pockets in the microwave. (Id.)

When he wakes up, he will take his medication and do some stretching that he learned from physical therapy, watches television and naps periodically during the day since he does not have a full night's sleep due to pain. (Tr. at 67.) He will go grocery shopping with his significant other when he feels up to it, but will go back to the vehicle before they finish shopping because he cannot walk very long. (Id.) He will go to church if he is feeling up to it, at least once a week. (Tr. at 67-

12

68.) He used to enjoy sporting events, but he could not sit and enjoy a game without pain; he has no hobbies, though before he was injured, he liked to ride motorcycles with his son and play basketball with him. (Tr. at 68.) He has an indoor dog and makes sure she has food. (Id.)

Claimant estimated that he can stand in one general location before having to sit for about ten to fifteen minutes, and sit in a chair [not a recliner] for ten minutes at the longest. (Tr. at 71.) Without pain, he could lift ten to fifteen pounds with both hands, but not even a couple of pounds without the pain starting. (Id.) Claimant estimated that he could walk as far as a football field or two length wise on a flat surface. (Id.)

Gina Baldwin, Vocational Expert ("VE") Testimony:

The VE classified Claimant's past relevant work as ranging from unskilled to skilled, heavy exertional level as performed. (Tr. at 73.) Given the hypothetical individual of Claimant's age, education, work experience and RFC that is limited to a range of light work and can frequently climb ramps or stairs, can occasionally climb ladders, ropes or scaffolds, can frequently balance, can occasionally stoop, kneel, crouch, or crawl, but should avoid concentrated exposure to extreme cold and excessive vibration, the VE testified that the individual could not perform Claimant's past relevant work. (Tr. at 73-74.) However, the VE opined that the individual could perform other jobs such as routing clerk, small parts assembler, and price marker, all light unskilled type work. (Tr. at 74.) For sedentary unskilled jobs, the VE testified that the individual could perform the jobs of table worker, final assembler and sorter. (Tr. at 74-75.)

With the added limitation that the individual would be limited to occasional handling on the left non-dominant hand, the VE testified that other work under the light unskilled classification would be available, including, product inspector and counter clerk. (Tr. at 75.) Under the unskilled

sedentary classification, the individual could perform the work for credit card information verifier and surveillance system monitor. (Id.)

In response to questioning from Claimant's attorney, the VE confirmed that if the individual were limited to occasional handling to the left, non-dominant hand, it would eliminate the jobs she identified in response to the first hypothetical. (Tr. at 76.) If the individual were further limited insofar as requiring a sit/stand option every fifteen minutes and could lift a maximum of fifteen pounds occasionally and less than fifteen pounds frequently, the VE testified that all the jobs she identified would be eliminated as well as all other work. (Id.) Finally, if the individual would be off-task up to 20% of an eight-hour workday due to a need to recline, the VE opined no unskilled work would be available. (Tr. at 76-77.)

## Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are

rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**<u>Analysis</u>**

<u>The RFC Assessment and Non-Severe Impairments:</u>

Claimant argues the ALJ did not provide an RFC assessment that fairly considered his non-severe impairments in addition to his severe impairments. (Document No. 12 at 5-6.)

As an initial matter, it is important to note that a "severe" impairment is one "which significantly limits your physical or mental ability to do basic work activities." <u>See</u> 20 C.F.R. §§ 404.1520(c), 416.920(c); <u>see also</u> <u>Id</u>. §§ 404.1521(a), 416.921(a). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." <u>Id</u>. §§ 404.1521(b), 416.921(b). The Regulations provide examples of these activities: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, coworkers and usual work situations; and (6) dealing with changes in a routine work setting. <u>Id</u>. Contrariwise, an impairment may be considered " 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." <u>Evans v. Heckler</u>, 734 F.2d 1012, 1014 (4th Cir. 1984).

Additionally, Claimant had to prove that he had an impairment (or combination of impairments) that had more than a minimal effect on his ability to do basic work activities for a continuous period of no less than 12 months. 20 C.F.R. §§ 404.1505(a), 416.905(a); SSR 96-3,

1996 WL 374181. Claimant also bears the burden of establishing a disabling impairment. See Heckler v. Campbell, 461 U.S. 458, 460 (1983); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (holding that the claimant bears the burden of proof and persuasion at steps one through four, stating "it is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so").

In this case, the ALJ first addressed Claimant's non-severe physical impairments, and acknowledged that the record indicated Claimant received treatment for left ulnar neuropathy, bradycardia, and GERD; the ALJ also considered his testimony that he loses grip in his left hand. (Tr. at 30.) After citing numerous references in the medical evidence of record, described *supra*, the ALJ properly determined that none of these physical impairments caused any limitation in Claimant's ability to perform work-related activities because there simply was no evidence to substantiate a finding otherwise. (Id.)

With respect to Claimant's mental impairment, depression, the ALJ noted the medical evidence, *supra*, did not indicate that it was severe, and more importantly, it did not satisfy the duration requirement that it persisted for twelve continuous months. Nevertheless, the ALJ went on to perform the special technique required under the Regulations when a claimant alleges a mental impairment, finding only mild limitations in each functional area and no episodes of decompensation which had been of extended duration. (Tr. at 31.)

Accordingly, the undersigned **FINDS** the ALJ's determination that Claimant's non-severe physical and mental impairments were non-severe was appropriate, compliant with the Regulations and pertinent case law, and supported by substantial evidence.

16

Claimant complains that the ALJ found him less than credible, and "exaggerating the severity of his impairments." (Document No. 12 at 6.) Social Security Ruling 96-7p[2] clarifies the evaluation of symptoms, including pain: 20 C.F.R. §§ 404.1529, 416.929 require a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements. See, also, Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

As an initial matter, it is well known that credibility determinations are properly within the province of the adjudicator and beyond the scope of judicial review. Hays v. Sullivan, 907 F.2d

---

[2] The undersigned is aware that this Ruling has been superseded by SSR 16-3p, effective March 28, 2016, however, the former Ruling applies to the ALJ's decision herein, having been issued on March 7, 2016. See, SSR 16-3p, 2016 WL 1131509.

1453, 1456 (4th Cir. 1990); Davis v. Colvin, 3:13-CV-23399, 2015 WL 5686896, at *7 (S.D.W. Va. Sept. 8, 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal.")

The ALJ considered Claimant's testimony, specifically noting that he alleged he could not work due to his back and arm pain, including his unsuccessful attempt to return to work. (Tr. at 33-34.) The ALJ further noted Claimant's testimony that he discontinued physical therapy because it caused him pain lasting three days, and that despite the use of a TENS unit, heating and cooling do not provide him with relief. (Tr. at 35.)

After properly performing the two-step process[3] finding that Claimant had an underlying medically determinable impairment, and that it could reasonably produce Claimant's pain and other symptoms, the ALJ determined his allegations were not entirely credible. (Tr. at 34.) The ALJ explicitly noted that Claimant made previous inconsistent statements about his physical capacity. (Id.) In his Function Report, he stated he went outside daily, can go out alone, cannot cook or prepare his own meals, helps get his children ready for school when he can get up, and that he shops in stores for food and clothes and sometimes goes shopping with his girlfriend.[4] (Tr. at 34, 278-280.) The ALJ contrasted these statements to Claimant's testimony that he could fix Hot Pockets in the microwave, but does not help get his children ready for school. (Tr. at 34.)

In addition to Claimant's allegations concerning his physical limitations, the ALJ reviewed the objective medical evidence concerning his knee pain as well as his back pain. The ALJ noted that the x-ray taken in June 2010 indicated his right knee had a "small joint effusion and no fracture

---

[3] See, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

[4] The undersigned finds it interesting that Claimant admitted in his Function Report dated August 1, 2013, "I'm applying for my social security not because I'm completely disabled, but because I'm not healthy enough to keep a job on a daily basis." (Tr. at 284.)

or dislocation." (Tr. at 34, 527.) Treatment records from 2013 and another x-ray of both knees in April 2013 indicated no joint pain during examinations or abnormality. (Tr. at 34, 330, 482, 688.) Even though "current treatment records" showed Claimant still experienced joint pain in his knees, an October 2015 treatment note showed he had a normal gait and ambulated unassisted and without a limp. (Tr. at 34, 635, 638, 642-643, 675.)

With regard to Claimant's back impairment, the ALJ reviewed the medical evidence that substantiated diagnoses of lower back pain and chronic back pain dating from 2012 through 2013, although a May 2012 x-ray indicated normal findings with minimal generative changes in L3-L4. (Tr. at 34, 681, 698, 700, 702.) The ALJ noted further that an x-ray of Claimant's lumbar spine taken in April 2013 indicated no significant degenerative changes. (Tr. at 34-35, 329.) Additionally, the ALJ considered Claimant's discharge from physical therapy, *supra*, even though he "was able to successfully complete additions without a reported increase in pain." (Tr. at 35, 727, 731.) Moreover, the ALJ examined the x-rays and MRIs taken of Claimant's spine in April 2015 that revealed no remarkable findings, other than "only minimal osteophytosis at L3-4" and "some right posterior paracentral protrusion versus extrusion at L5-S1 abutting the S1 nerve root." (Tr. at 35, 649-652.) The ALJ compared this with treatment records from August 2015 and September 2015 showing Claimant was stable, had a normal gait, and no evidence of positive straight leg raise tests. (Tr. at 35, 640, 645.)

In sum, the ALJ performed a proper credibility assessment, and it is clear that she explored the factors promulgated under the Regulations the alleged effects Claimant's symptoms had on his ability to function. Accordingly, the undersigned **FINDS** that the ALJ properly discredited Claimant's statements in light of the evidence of record.

Claimant takes issue with the ALJ's affording "great weight" to the opinions of the non-examining, non-treating State agency sources. (Document No. 12 at 6.) 20 C.F.R. §§ 404.1527 and 416.927 govern the SSA's criteria for evaluating opinion evidence; per §§ 404.1527(a)(2), 416.927(a)(2):

> Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

The Regulations provide that an ALJ must analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(c)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Under §§ 404.1527(c)(1) and 416.927(c)(1), more weight is given to a physician who examines a claimant than to a non-examining physician.

Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

There is no treating source medical opinion in the record. However, it is clear that the ALJ considered and gave great weight to opinion evidence provided by one examining physician, Dr. Waltrip. (Tr. at 35.) After her review of Dr. Waltrip's consultative examination report, the ALJ assigned Dr. Waltrip's opinions "great weight", specifically that Claimant had "very minimal

limitation of walking, standing, or sitting, and should be able to lift objects up to thirty-five to forty pounds without limitation." (Tr. at 35-36, 570.) The ALJ explained she gave great weight to these opinions "because they are supported with an explanation and consistent with the record as a whole. Treatment records confirm the claimant's ongoing back and knee pain, and I have accommodated the claimant's testified limitations with a reduction to light work." (Tr. at 36, 638-643.)

In sum, the undersigned **FINDS** that the ALJ's evaluation of the opinion evidence, particularly with Dr. Waltrip, complied with the Regulations and was supported by substantial evidence.

Finally, with regard to the ALJ's residual functional capacity assessment, it is important to recognize that an RFC represents the *most* that an individual can do despite his limitations or restrictions. See Social Security Ruling 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC determination is an issue reserved to the Commissioner. See Id. §§ 404.1527(d), 416.927(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

21

As described *supra*, the ALJ properly considered Claimant's testimony and statements regarding what he believed he could still do or no longer do, as well as the medical and nonmedical evidence of record. In this case, the opinion evidence provided by two State agency consultants, as well as a DDS examiner was consistent, and the ALJ appropriately adopted same in crafting the RFC assessment. It is notable that the opinion evidence was undisputed; there is no treating source opinion or medical record that indicated Claimant was more limited. Furthermore, the undersigned agrees with the Commissioner that the ALJ was "generous and reasonable" insofar as she reduced Claimant's RFC to less than a full range of light work in consideration of his testimony. (Document No. 13 at 18; Tr. at 36.)

Accordingly, the undersigned **FINDS** that the RFC assessment is based upon substantial evidence.

Vocational Expert Testimony:

It is well known that hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Though Claimant's attorney posed a hypothetical to the vocational expert concerning an individual being off task 20% in an eight-hour workday, there is no medical evidence in the record that supports any such limitation. (Tr. at 76.) In this case, the ALJ gleaned the opinion evidence, the medical record, and even Claimant's testimony, and managed to "build an accurate and logical bridge from the evidence to [her] conclusion" where this Court could find the RFC assessment was based on substantial evidence. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). In short, the undersigned **FINDS** that the ALJ's consideration of and resolution of Claimant's limitations and abilities were

"rational" and based upon substantial evidence. <u>Oppenheim v. Finch</u>, 495 F.2d at 397.

The undersigned further **FINDS** that the ALJ's decision finding Claimant was not disabled is supported by the substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for judgment on the pleadings (Document No. 12.), **GRANT** the Defendant's request to affirm the decision (Document No. 13.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), <u>reh'g denied</u>, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933

(1986); <u>Wright v. Collins</u>, 766 F.2d 841 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: October 17, 2017.

Omar J. Aboulhosn
United States Magistrate Judge